Filed 6/22/23  In re A.R. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E080766 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2000713) |
| v. | OPINION |
| N.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge.

Conditionally reversed with directions.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant

and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Prabhath Shettigar,

Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and appellant N.S. (Mother) appeals after the termination of her parental rights to A.R. (a girl, born August 2020; Minor) at a Welfare and Institutions Code section 366.26[1] hearing. On appeal, Mother contends the matter must be reversed for the failure of plaintiff and respondent Riverside County Department of Public Social Services (the Department) to adequately perform its duty of inquiry about Indian ancestry to determine whether Minor was an Indian child pursuant to the Indian Child Welfare Act of 1978.[2] (ICWA) and California law (§ 224.2, subd. (b)). Remand is necessary in order for additional inquiry as to whether Minor is an Indian child.[3]

## FACTUAL AND PROCEDURAL HISTORY

### A. DETENTION

Mother (age 19) and E.R. (Father) (age 20) were parents to Minor. On October 8, 2020, an immediate response referral was received regarding allegations of general neglect of Minor. Maternal grandmother (MGM) had gone to the home of Mother and Father (Parents) on the morning of October 8, 2020, to pick up Minor. When MGM arrived, Parents were engaged in a physical and verbal altercation. MGM left the home and instructed maternal grandfather (MGF) to go to the home to get Minor. When MGF

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3] Mother raises additional arguments in the reply brief that we will discuss, *post.*

2

returned to the home, Mother was laying on the floor unconscious and had bruises around her neck. MGF took Mother and Minor to his home, but Mother returned to Father. It was further reported that Mother had previously presented with bruises but refused to report any domestic violence. It was also reported that Parents smoked marijuana in Minor's presence.

Mother was interviewed on October 8, 2020. She insisted she and Father did not smoke marijuana in front of Minor. Mother disclosed that she and Father argued a couple of times each week. Mother admitted that Father had grabbed her by the arms and neck. She had bruises and scratches on her neck. She denied that she was rendered unconscious. She disclosed that when MGF arrived, he and Father got into an altercation. Father punched MGF and knocked him out. Mother reported that two weeks prior, she and Father got into an argument. She tried to block the door so he would not leave and he scratched her on the arm getting past her.

Father was also interviewed. He admitted he was the biological father of Minor. He admitted that he and Mother had gotten into a verbal argument, but denied that it got physical. Mother had passed out on the floor from expending too much energy so he placed her on the bed. MGF entered their bedroom and thought Father was hurting Mother. Father admitted he and MGF got into a fight and MGF had been knocked out. He claimed as to the incident two weeks prior that Mother blocked the door and would not let him leave. He accidentally scratched her while trying to move her out of the way. He also admitted to smoking marijuana daily but never in front of Minor.

3

Mother agreed to participate in domestic violence classes. She also agreed that she and Minor would live with maternal grandparents until she and Father could complete domestic violence classes. Father agreed to attend anger management and domestic violence classes.

On October 29, 2020, the family was approved for family maintenance services. Parents were awaiting acceptance into domestic violence programs. On November 18, 2020, it was discovered that Mother and Minor were living with Father. Mother claimed that MGM had kicked her out. Parents admitted recent marijuana use and verbal arguments. They had failed to participate in any of their family maintenance services. The Department recommended that Minor be removed from the Parents' care.

The social worker prepared a probable cause statement to support the Department's request to have law enforcement assist in executing a protective custody warrant for Minor. A protective custody warrant pursuant to section 340 was approved by the juvenile court on November 19, 2020. Minor was removed from Parents' care on November 20, 2020, with the assistance of law enforcement. She was placed in a foster home.

In the detention report, the social worker provided, "The Indian Child Welfare Act does or may apply. On October 8, 2020, both mother, . . . and father, . . . , were asked if they were of Native American descent. [Parents] denied knowledge of anyone in their family being . . . Native American." The Department recommended that the juvenile court find ICWA did not apply and that the Department had made sufficient inquiry.

4

On November 24, 2020, the Department filed a petition on behalf of minor under section 300, subdivision (b) (petition).  The box was checked that an inquiry gave the social worker "reason to believe the child is or may be an Indian child."  No other information was provided.

On November 25, 2020, the detention hearing was held.  Parents, MGM and a maternal aunt (Aunt) were present in court.  Mother requested that Minor be returned to her and Father requested that Minor not be removed from his custody.  The juvenile court found a prima facie showing had been made and Minor was ordered detained.  The juvenile court noted on the record that both Mother and Father had submitted ICWA-020 forms and that they were both unaware of any Indian ancestry.  The ICWA-020 forms were filed and both Father and Mother denied any Indian ancestry.  The court found the Department made sufficient inquiry as to Minor's Indian ancestry, and ICWA did not apply.  Father was named the presumed father.  The juvenile court inquired of Aunt as to possible placement of Minor.  Aunt lived with MGM and could help care for Minor.  The juvenile court recalled the protective custody warrant.

B.    JURISDICTION/DISPOSITION REPORT AND HEARING

The December 16, 2020 jurisdiction/disposition report recommended that the juvenile court find the allegations in the petition true and to grant Parents reunification services. It also recommended that the juvenile court find ICWA does not apply.  Parents denied any Indian ancestry on October 8, 2020, and the juvenile court found at the detention hearing that ICWA did not apply.  Minor remained in a foster home.

5

Parents were separately interviewed on December 7, 2020. They both admitted smoking marijuana and engaging in domestic violence but denied that either had occurred in front of Minor. Parents had enrolled in domestic violence classes. Father was living with paternal grandmother. Father admitted to suffering from anger issues. Minor was developing normally and had adjusted well to her placement. Parents wanted to be reunited with Minor. MGM's home had not been approved for placement of Minor. Paternal grandfather was contacted; he also was not approved for placement.

On December 21, 2020, the matter was heard. Parents were present. The Department filed an amended petition removing the allegation that Parents were granted family maintenance services and failed to benefit from the services. The juvenile court found that the Department had conducted a sufficient inquiry as to whether Parents had Indian ancestry, and found that ICWA did not apply.

Parents waived their rights and submitted on the allegations in the amended petition. The juvenile court found the allegations in the amended petition true. Parents were granted reunification services. Minor was to remain in the foster home.

C.     REVIEW REPORTS AND HEARING

The six-month status review report recommended that reunification services be continued for Parents. There was no new information that ICWA applied. Parents reported they were no longer in a relationship. Mother was living with MGM and had found a job. Mother was participating in her services and attended visitation. She would complete her services by the next court date.

On March 17, 2021, Father pleaded guilty to a charge of inflicting corporal injury on a spouse for reportedly hitting Mother with a cord and broom handle. A criminal protective order listing Mother as the protected person and Father as the restrained person was issued on March 17, 2021, and was set to expire on March 17, 2024. Father had been placed on probation.

Minor was having feeding trouble due to an undeveloped chin. She was being evaluated to determine if she was a medically fragile child due to her feeding issues.

An addendum report was filed on June 10, 2021. Minor had been evaluated and was declared medically fragile. Training was recommended for the current caregiver; Mother, MGM and Father should also receive special training. The six-month review hearing was held on June 21, 2021. Reunification services were continued for Parents and included training to care for Minor.

The 12-month status review report was filed on December 3, 2021. It was recommended that reunification services for Mother be continued with an authorization for family maintenance when it was deemed appropriate. The Department also recommended that reunification services be terminated for Father. Minor was not meeting her developmental milestones but was receiving services. Mother was continuing to participate in services; Father was not participating in services and had not been in contact with the Department. In an addendum report, the Department requested that Mother submit to a psychological evaluation to determine appropriate case plan services. The juvenile court continued the 12-month review hearing in order for Mother to be evaluated. The matter was further continued so that Mother could participate in

intensive therapy to treat her depressive disorder and posttraumatic stress as recommended by the doctor who performed the psychological evaluation, and in order for Mother to complete a parenting program.

The 12-month review hearing was held on March 28, 2022. Mother's reunification services were continued to the 18-month status review hearing. Father's reunification services were terminated. The 18-month status review hearing was continued in order for Mother to complete her parenting program. Several addendum reports were filed. It was recommended by the Department that reunification services be terminated for Parents at the 18-month review hearing and that a section 366.26 hearing be set. The permanent plan was adoption. Mother had missed her therapy sessions, Minor's doctor appointments, visitations, and had been terminated from her parenting program for failing to participate. Minor had been diagnosed with autism.

The contested 18-month review hearing was conducted on July 20, 2022. The trial court terminated reunification services for Parents and set the matter for a section 366.26 hearing.

D.    SECTION 366.26 REPORTS AND HEARING

The Department filed a section 366.26 report and addendum recommending that the juvenile court terminate the parental rights of Parents and free Minor, who was now two years old, for adoption by the foster parents. The juvenile court adopted the recommendations of the Department and terminated parental rights, freeing Minor for adoption.

8

## DISCUSSION

Mother contends the matter must be remanded based on the failure of the Department to adequately perform its initial duty of inquiry pursuant to ICWA and pursuant to California law, specifically the requirement of section 224.2, subdivision (b), to inquire of Minor's extended family about Indian ancestry to determine whether Minor was an Indian child.

### A.     ICWA AND STATE LAW REQUIREMENTS

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*Isaiah W*. (2016) 1 Cal.5th 1, 7.)  " 'Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.' " (*In re S.R.* (2021) 64 Cal.App.5th 303, 313.)

"ICWA provides:  'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child, . . . shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.' [Citation.]  ICWA also requires child welfare agencies to notify the [Bureau of Indian Affairs] of the proceedings, if the juvenile court knows or has reason to know the child

9

may be an Indian child but the identity of the child's tribe cannot be determined." (*In re N.G.* (2018) 27 Cal.App.5th 474, 479-480, fn. omitted.) " 'ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child. [Citation.] Federal regulations implementing ICWA, however, require that state courts "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." . . . [¶] . . . "ICWA provides that states may provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under' ICWA." (*In re J.S.* (2021) 62 Cal.App.5th 678, 685.)

Pursuant to California law, section 224.2, subdivision (a), provides, "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child. The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." Subdivision (b) of section 224.2 provides, "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child

10

abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."

### B.     SECTION 224.2, SUBDIVISION (B) DOES NOT APPLY

The Department contends the initial inquiry requirements of section 224.2, subdivision (b), were not applicable here as Minor was detained under a protective custody warrant pursuant to section 340. Based on the plain language of section 224.2, subdivision (b), it only applies to detentions pursuant to section 306. Mother contends this court should find that cases relied upon were wrongly decided.

"There is no federal duty to inquire of extended family members." (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) The duty of inquiry under state law comes from section 224.2, subdivision (b). The plain language of section 224.2, subdivision (b), provides that if a child is placed into the temporary custody of a county welfare department pursuant to section 306, there is a duty to inquire of extended relatives about Indian ancestry. " ' "[I]f the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs." ' " (*Melissa R. v. Superior Court* (2012) 207 Cal.App.4th 816, 822.)

Section 306 provides, "(a) Any social worker in a county welfare department, or in an Indian tribe that has entered into an agreement pursuant to Section 10553.1 while acting within the scope of his or her regular duties under the direction of the juvenile court and pursuant to subdivision (b) of Section 272, may do all of the following:

"(1) Receive and maintain, pending investigation, temporary custody of a child who is described in Section 300, and who has been delivered by a peace officer.

11

"(2) Take into and maintain temporary custody of, without a warrant, a child who has been declared a dependent child of the juvenile court under Section 300 or who the social worker has reasonable cause to believe is a person described in subdivision (b) or (g) of Section 300, and the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety.

"(b) Upon receiving temporary custody of a child, the county welfare department shall inquire pursuant to Section 224.2, whether the child is an Indian child."

Section 340, subdivision (a) provides, "Whenever a petition has been filed in the juvenile court alleging that a minor comes within Section 300 and praying for a hearing on that petition, or whenever any subsequent petition has been filed praying for a hearing in the matter of the minor and it appears to the court that the circumstances of his or her home environment may endanger the health, person, or welfare of the minor, or whenever a dependent minor has run away from his or her court-ordered placement, a protective custody warrant may be issued immediately for the minor." Section 340, subdivision (d)(2) provides "Nothing in this section is intended to limit a social worker from taking into and maintaining temporary custody of a minor pursuant to paragraph (2) of subdivision (a) of Section 306."

In his concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342 (*Adrian L.*), a case involving a child being placed into protective custody pursuant to section 340,

subdivision (b), Justice Kelley[4] first noted, "Despite the large number of recent appeals based on DCFS's failure to make inquiries of 'extended family members,' no case appears to have confronted the question of why the prefatory clause in section 224.2, subdivision (b) should be interpreted as meaning something other than what it plainly says—that the inquiry obligation expressed in this subdivision is triggered when the child is 'placed into the temporary custody of a county welfare department pursuant to [s]ection 306.' " (*Adrian L.*, at p. 356, conc. opn. of Kelley, J., fn. omitted.) After extensive examination of the legislative history of section 224.2, subdivision (b) and the plain language of the statute (*Adrian L.*, at pp. 358-366), Justice Kelley concluded, "[A] removal under section 306 is considered an 'emergency removal' under ICWA, but a removal pursuant to an order issued under section 340 is not. This distinction illuminates why the legislative choice to limit the scope of section 224.2, subdivision (b) to situations where a child is placed in temporary custody of a county welfare agency pursuant to section 306 aligns it with federal ICWA guidance." (*Id.* at p. 357.) As such, the requirement of section 224.2, subdivision (b) did not apply to the case in which the child was removed under section 340. (*Adrian L.*, at p. 357.)

Recently, in *In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*), our court followed the reasoning in Justice Kelley's concurring opinion in *Adrian L.* The *Robert F.* court held that section 224, subdivision (b), did not apply in the case because the minor

---

**4** Judge Michael Kelley was sitting on assignment at the Second District Court of Appeal when wrote his concurring opinion in *In re Adrian L.* Therefore, respectfully, we use the title that is correct for his position at the time.

was taken into protective custody and not temporary custody. Accordingly, the "inquiry obligation prescribed by subdivision (b) of section 224.2 was not triggered." (*Id.* at p. 500.) The court further found that "reading subdivision (b) together with other subdivisions of section 224.2 highlights the Legislature's intent to apply subdivision (b) narrowly. Other subdivisions addressing the duty of inquiry apply in all dependency cases without limitation. The subdivision (a) 'affirmative and continuing duty to inquire' applies whenever a section 300 petition may be or has been filed, and the subdivision (c) duty of the court to ask about a child's Indian status applies '[a]t the first appearance in court of each party.' (§ 224.2, subds. (a), (c).) The broader language used in those subdivisions 'underscores that the more limited expression the Legislature chose to use in establishing the duty of initial inquiry in section 224.2, subdivision (b) was a conscious decision.' " (*Id.* at p. 501.) The court also concluded the legislative history supported that section 224.2, subdivision (b), applied only to a child who had been placed in temporary custody pursuant to section 306. (*Id.* at p. 502-503.)

We need not repeat the extensive examination of the issue by Justice Kelley or the court in *Robert F*. We adopt their reasoning here. Based on the plain language in section 224.2, subdivision (b), it is applicable only to situations where "a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306." Here, Minor was placed into the Department's custody pursuant to court order under section 340, subdivision (a), not through the warrantless removal procedure provided by section 306. Accordingly, the Department was not required to conduct inquiries with "extended family members" at this initial inquiry stage pursuant to section 224.2, subdivision (b).

14

Based on the plain language of section 224.2, subdivision (b), Minor was taken into custody pursuant to section 340 and not section 306. As such, section 224.2, subdivision (b) would not apply to this case.

In her reply brief, Mother requests that this court reject the reasoning in *Robert F.* and find it was wrongly decided. She insists that it is the only case holding as such. This is not a reason to reject *Robert F.* as its reasoning is correct.

Mother further contends the reasoning in *Robert F.* would defeat the whole purpose of ICWA; the fact that Minor was taken into protective custody pursuant to section 340 does not alter the fact that Minor was placed in the temporary custody of the Department; and treating those taken into temporary custody and those taken into protective custody differently violates the equal protection clause of the federal Constitution. These arguments were recently rejected in *In re Ja.O.* (2023) 91 Cal.App.5th 672, 680-681 ("By imposing an expanded duty of initial inquiry for children taken into custody without a warrant, the Legislature was following the recommendation in the federal guidelines. [Citation.] The Legislature's decision to follow the federal guidelines' recommendation is not absurd. Rather, because warrantless detentions trigger various time-sensitive ICWA-related requirements that are otherwise inapplicable (§ 306, subd. (d)), it makes sense in such cases to expand the duty of initial inquiry—confirming whether the child in such a case is an Indian child is particularly urgent"). Further, Justice Kelley found that restricting section 224, subdivision (b), did not frustrate the purpose of ICWA. (*Adrian L.*, *supra*, 86 Cal.App.5th at pp. 368-369.)

15

We are bound by the plain language of the statute, which only applies to temporary custody taken pursuant to section 306. As such, there was no duty of inquiry pursuant to section 224.2 subdivision (b).

### C. DUTY OF INQUIRY UNDER SECTION 224.2, SUBDIVISION (C)

Mother contends in her reply brief that she made an argument in the opening brief that the juvenile court also failed to fulfill its duty of inquiry pursuant to section 224.2, subdivision (c). Subdivision (c) of section 224.2 provides, "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (See also *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

First, Mother did not properly raise this issue in her opening brief. Mother cited to section 224.2, subdivision (c), in the opening brief but provided no argument or legal authority to support that the juvenile court failed to adequately inquire of all participants at the initial hearing. Moreover, the opening brief requested remand in order for the Department and juvenile court to cure the defect of failing to inquire pursuant to section 224.2, subdivision (b), only. Points raised for the first time in the reply brief ordinarily are not considered. (*Jameson v. Desta* (2009) 179 Cal.App.4th 672, 674, fn. 1.) However, numerous appellate courts have exercised their discretion to consider such arguments in cases involving ICWA notice. (*In re D.S.*, *supra*, 46 Cal.App.5th at p.

1051; *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 340.) We will choose to exercise our discretion and consider the argument.

The juvenile court erred by failing to make any ICWA inquiry of Parents, MGM or MA, who were all present at the first hearing.[5] (§ 224.2, subd. (c).) We acknowledge that Parents advised the social worker that they had no Indian ancestry, that the juvenile court stated in open court that Parents had denied Indian ancestry and that Parents had each signed the ICWA-020 form denying Indian ancestry. As such, any conceivable error in failing to inquire of Parents at the initial hearing is harmless under any standard. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 589.) However, there is nothing in the Department's reports or on the record indicating that there was any type of inquiry as to MGM and Aunt, who were present at the initial hearing. It is impossible to surmise what they may have reported as to Indian ancestry. As such, it is appropriate to order limited remand in order for the juvenile court to inquire of MGM and Aunt as to whether Minor has Indian ancestry. We will so order.

**DISPOSITION**

The order terminating parental rights to Minor is conditionally reversed. On remand, the juvenile court shall comply with its duty of initial inquiry under section 224.2, subdivision (c), to inquire of MGM and Aunt who were present at the initial

---

[5] In *Adrian L.*, Justice Kelley explained that "participant" in section 224.2, subdivision (c) is properly interpreted as including any family members. (*Adrian L.*, *supra*, 86 Cal.App.5th at pp. 371-372, quoting 81 Fed.Reg. 38803 (June 14, 2016).) Certainly, had MGM and MA not been present at the initial hearing, there would be no duty of further inquiry under section 224.2, subdivision (c). However, the record clearly states they were present and that the juvenile court was advised they were present.

hearing, as to Minor's Indian ancestry. If the court determines that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

MENETREZ
J.

18